

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
ATTORNEY GENERAL

Honorable Ernest O. Thompson, Chairman
Railroad Commission of Texas
Austin, Texas

Dear Sir:                    Opinion No. O-2642
                             Re: Legality of furnishing
                                 of communication services
                                 by rail and motor carriers.

          You have renewed the request of former commis-
sioner Lon A. Smith for the opinion of this department upon
the following fact situation which is quoted from his letter
of August 16, 1940:

          "The Railroad Commission originally
     prohibited both rail and highway carriers
     from conveying messages and orders, either
     written or verbal, by telephone, telegraph,
     or otherwise between shippers and consignees,
     and from directly or indirectly paying tele-
     phone or telegraph charges in behalf of or
     in the interest of shippers and consignees.
     The Commission later amended this order so
     as to prohibit only the conveying of messages
     or orders for shippers by telephone or tele-
     graph.  The Commission on February 28, 1940,
     rescinded all of its previous orders and
     there are now no outstanding Commission
     orders on the subject.  Copies of these
     orders are enclosed herewith.

          "On April 18, 1940, a petition was
     filed with the Commission by certain rail
     and motor transport companies asking that
     the Commission issue an order prohibiting
     common carriers by rail or highway from
     rendering and performing accessorial services
     of this nature, which petition was dismissed.

          "We would like to have your opinion as
     to whether under the Statutes of this State,
     particularly Section 16 of the Motor Carrier
     Act of 1931, as amended, the furnishing of

such service by rail and highway carriers, either or both, is permissible or prohibited. If you find that the Statutes forbid the practice, is any Commission order necessary? If you find that the Statutes are silent on the subject, are you of the opinion that the Commission can by its order authorize or prohibit the practice; and if so, do you consider it necessary in view of its former orders and hearings, for the Commission to conduct additional hearing or hearings after due notice?"

Supervision and regulation of motor carriers is vested in the Railroad Commission of Texas by Article 911b, Vernon's Annotated Civil Statutes. Section 4a reads as follows:

"The Commission is hereby vested with power and authority and it is hereby made its duty to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in the State, to fix, prescribe or approve the maximum or minimum, or maximum and minimum rates, fares and charges of each motor carrier in accordance with the specific provisions herein contained, to prescribe all rules and regulations necessary for the government of motor carriers, to prescribe rules and regulations for the safety of Operations of each of such motor carriers, to require the filing of such monthly, annual and other reports and other data of motor carriers as the Commission may deem necessary, to prescribe the schedules and services of motor carriers operating as common carriers, and to supervise and regulate motor carriers in all matters affecting the relationships between such carriers and the shipping public whether herein specifically mentioned or not." (Emphasis ours).

Section 4c states that:

"The Commission is further authorized and empowered and it shall be its duty to supervise and regulate motor carriers in all matters affecting the relationship between

such motor carriers and the shipping public
that may be necessary to the interest of the
public."

Article 1690b, paragraph (g), Vernon's Annotated
Penal Code of Texas, reads as follows:

"It shall be unlawful for any motor
carrier (common or contract), or the owner
of a certificate or permit, or his agent,
servant or employee, directly or indirectly,
to offer, permit or give to any person,
directly or indirectly, any commission or
other consideration to induce such person
to deliver to such motor carrier or certi-
ficate or permit owner property to be trans-
ported; * * * and it likewise shall be un-
lawful for any shipper or consignee or his agent.
servant or employee, to receive from such motor
carrier, directly or indirectly, any such com-
mission or consideration as an inducement to
secure the transportation of any such property.
* * *".  (Emphasis ours).

Paragraph (h) of Article 1690b reads as follows:

"Any common carrier motor carrier, his
agent, servant or employee who directly or
indirectly gives to any shipper any rebate,
or any shipper, his agent, servant or em-
ployee who directly or indirectly receives
any rebate, shall be guilty of a misdemeanor
ans shall be punished by fine not to exceed
Two Hundred ($200) Dollars for each offense,
in any court of competent jurisdiction in
this State.  It being the intention of this
Act that such motor carriers shall in every
instance collect and receive, and the ship-
pers shall pay, only the rate or fee pre-
scribed or approved by the Commission."
(Emphasis ours).

Chapter 11, Title 112, Revised Civil Statutes of
1925, relates to the Railroad Commission of Texas, its power
and authority.  Article 6445 makes it the duty of the Rail-
road Commission to "adopt all necessary rates, charges and
regulations, to govern and regulate such railroads, persons,
associations and corporations, and to correct abuses and
prevent unjust discrimination in the rates, charges and

tolls of such railraods, persons, associations and corporations, and to fix division of rates, charges and regulations between railraods and other utilities and common carriers where a division is proper and correct, and to prevent any and all other abuses in the conduct of their business and to do and perform such other duties and details in connection therewith as may be provided by law." (Emphasis ours).

The first paragraph of Article 6448 provides that the Commission shall "adopt all necessary rates, charges and regulations, to govern and regulate freight and passenger traffic, to correct abuses and prevent unjust discrimination and extortion in rates of freight and passenger traffic on the different railroads in this State."

Article 6474 prohibits unjust discrimination and in that connection states that the following shall constitute unjust discrimination:

"If any railroad subject hereto directly or indirectly or by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, or shall give any undue or unreasonable preference or advantage to any particular person, firm or corporation, or locality, or to subject any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever." (Emphasis ours).

Article 6513 provides that the Commission shall fix just and reasonable rates to be charged by railroad companies and that it shall adopt such rates, rules and regulations as will prevent discrimination in the operation of the tracks or the handling of traffic. Article 6515 also relates to the discriminatory operation of tracks and Article 6516 fixes a penalty for the failure of any railroad company to comply with the orders of the Commission.

Chapter 9, Title 19, Penal Code of Texas, is devoted to the Railroad Commission. Article 1687 of that chapter fixes punishment for the following offenses:

"If any officer, agent, clerk, servant or employee, or any receiver, or his servant,

agent, or employee of any railroad company in this State shall, _directly or indirectly, or by any special rate, rebate, drawback, or other device_, for, and on behalf of such railroad company, knowingly charge, demand, contract for, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered, or to be rendered, by any such railroad company that such railroad company * * * demands, contracts for, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, or if any officer, agent, clerk, servant or employee, or receiver, or his agents, servants, or employees, of any railroad company in this State, shall on behalf of such railraod company, make or give _any undue or unreasonable preference or any advantage_ to any particular person, company, firm, corporation or locality, as to any service rendered or to be rendered by such railroad company, or shall subject any particular description of traffic on such railroad company to any undue or unreasonable prejudice, delay or disadvantage in any respect whatever. * * *." (Emphasis ours).

The above legislative enactments are in compliance with Constitutional mandate. The Supreme Court of Texas has stated that the Constitution delegated to the Legislature the duty of passing laws for the correction of all abuses or improper uses of franchises which have been granted or might be granted to railroads in this State, as well as to all abuses connected with or growing out of business transacted in the exercise of such franchises. _Railroad Commission v. H. & T. C. Railroad Co., 90 Tex. 340_. The statutes which the Legislature has enacted follow closely the language of the Constitution, and it is clear that the general and ultimate purpose which the Legislature had in mind was to establish equal and fair rates and to prohibit rebates or discrimination regardless of the form which they might take.

Cases arising in interstate commerce bear a striking resemblance to situations which have been or may be presented under the Texas statutes, due to similarity in purpose and language between the Acts of Congress and the Statutes enacted by the Texas Legislature. The same observation holds true with respect to cases arising in other States. The general purpose of all statutes or acts of

Congress relating to rates, discriminatory rates and rebates is to prevent unjust discrimination and unequal rates. The Supreme Court of the United States, in the case of United States vs. Chicago and A. R. C. 212 U. S. 563, states that "* * * any device by which the freight rate is reduced below the rate given in the published schedule is one for giving a rebate," and again in the same case that "the net amount which the carrier receives from a shipper and retains fixes the 'rate' charged." In the case of Chicago and A. R. Company vs. Kirby, 225 U. S. 155, the Supreme Court held that where no provision was made for expedited service in the published rates, the shipper was required to pay only the rate published, and could not be required to pay a higher rate for any special or expedited service. A higher rate might be exacted for special service but if such is the case, the rate must be published.

In the case of New York Central & H. R. Oil Co., vs. General Electric Co., 114 N. E. 115, Justice Cardoza of the New York Court of Appeals ruled that an allowance by a railroad for services rendered by the consignee after delivery was an unlawful rebate. The opinion states that a reasonable allowance may be made for necessary services rendered by the consignee in completing delivery but that no allowance may be made for services which the railroad company was under no duty to perform.

It appears to be well settled that any device whereby one person is charged less than another for the same service constitutes a rebate, and further, that a rebate automatically results if there is any deviation from the published tariff. With particular respect to Acts of Congress, it has been held that no device to defeat legislation relative to discriminatory rates can be upheld. State Line and S. R. Co. vs. Lehigh Valley Oil Co., 120 Atl. 829. Further, it appears that the mere fact that a carrier is under no legal duty to perform a particular transportation service or a particular item of service in connection with the transportation of persons or property does not authorize discrimination in that respect. 9 Amer. Jur. 571; Kansas City & S. R. Co., vs. U. S., 282 U. S. 760. Rates as fixed must be strictly adhered to and there must be no departure therefrom. A device need not necessarily be fraudulent in order to result in a prohibited rebate, the purpose of statutes in this regard being to prohibit every method of dealing by which the forbidden result can be brought about. Too much stress cannot be laid on the intention of the lawmaking bodies to provide

one rate with equal privileges existing for all shippers thereunder. Armour Packing Co. vs. U. S., 209 U. S. 56, Winn vs. Express Co., 128 N. W. 663.

In the case of Federal Gravel Co. vs. Detroit & M. R. Co., 226 N. W. 677, the Supreme Court of Michigan following the trend indicated in the cases cited above, and under a typical situation, holds that a rebate may be accomplished by indirect as well as direct methods. The state utes involved in this case are somewhat similar to the Texas laws. Turning again to interstate commerce we find the case of Interstate Commerce Commission vs. Louisville & R. R. Co., 118 Fed. 613, holding that a carrier cannot for the purpose of building up a port on its own line at the expense of a rival road adopt rates which are unreasonable in themselves or unduly preferential, 13 C. J. S. 845.

The Supreme Court of New Hampshire in the case of Boston & M. R. R. Co., vs. Greatfalls Manufacturing Co., 111 Atl. 691, holds that a separate charge should have been made by the carrier for ferry service rendered to shippers. The case appears to be authority for the proposition that if a particular service rendered by a carrier is of substantial benefit to shippers of a particular class, but not to those of other classes, the expense of such service cannot be considered part of the overhead and included in general rates, but a separate charge therefor should be made against shippers receiving the benefit, if all of the shippers are to be treated substantially alike. The following quotation is from the body of the opinion and is the test established by the Supreme Court of New Hampshire upon which the decision turns:

> "The test to determine whether a seperate charge should be made for that service is to inquire whether that must be done if all shippers (those who do and those who do not need that service) are to be treated substantially alike, and that is also the test to determine whether such charge is permissible. * * *."

The offer of communication service to shippers by rail or highway carriers, regardless of the mode of communication employed, is not a part of transportation service. At the most it is an inducement to the shipper to avail himself of facilities offered by the particular carrier. Ordinarily the cost of communication between consignor and consignee must be borne by one of those parties, and is a legitimate business expense, properly charged to the person or

firm contracting for it. It is readily apparent therefore
that any communication service offered by the carrier is a
more or less valuable consideration, unless the consignor
or consignee has no reason nor desire to avail himself of
the service. We think the inevitable result is a difference
in the rates charged for the transportation of property.
The carrier's payment of communication charges, directly or
indirectly, constitutes a rebate or concession by the car-
rier, resulting in a lower rate than that published. The
amount of rebate depends upon certain factors which would
appear to be immaterial to this opinion. The service is
one of which a shipper might or might not desire to avail
himself. If he does not avail himself of all facilities
and inducements offered by the carrier, he will pay the
same rate for freight as does the shipper who does avail
himself of the free communication service. Communication
is not a service which the transportation agency can be re-
quired to render, and under ordinary circumstances any com-
munication between consignor and consignee would be paid
for at rates fixed by the communication agency. We believe
the practice is prohibited both as to rail and highway car-
riers by the statutes set out in this opinion. To hold
otherwise would be to violate the intention and purpose of
the Legislature and framers of the Constitution of Texas
in their effort to prevent devices which result in unequal
freight rates. The message or communication facilities
offer to the shipper, at the election of the carrier, a
free service to which he is not normally entitled. Further,
the carrier is at liberty to arbitrarily grant or refuse
the service, and to prefer certain shippers or localities
to the detriment of others. Certainly, it cannot be said
that a shipper who does not get the benefit of communication
service, either by reason of not having a demand for it or
by not having it offered to him, is on an equal footing with
a shipper who, paying the same rate, obtains and avails him-
self of communication at no additional cost. The fact that
such service has been offered in the past, or even that it
has become an established custom by reason of lapse of time,
is not material to the issue; nor is the fact that confusion
might result from prohibition of the practice. 13 C. J. S.
845; Atchinson & S. F. R. Co. vs. State, 206 P. 236.

    In answer to the specific questions which you have
asked, we are of the opinion that the statutes prohibit the
practice of furnishing free communication service by rail or
highway carriers, and that an order of the Commission is not
necessary to prohibit or punish. The Legislature has, however,
provided for general supervision and regulation by the

Railroad Commission, to correct abuses, prevent unjust discrimination, rebates, inducements, etc. The Commission has been given power to prescribe reasonable rules and regulations pertaining to rates, discrimination, additional services, etc., and is charged with the duty of supervising matters affecting the relationship between carriers and shippers. We are of the opinion, therefore, that the Commission may if it desires, conduct additional hearings and make such reasonable rules and regulations as it deems necessary under the circumstances.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By /s/Ross Carlton
   Ross Carlton
   Assistant

RC:eaw:mg

APPROVED MARCH 10, 1941

/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE

By BWB
  Chairman

O.K.
GRL